**GENERAL AMERICAN LIFE INS. CO. v. STEPHENS.**

No. 9722.

Circuit Court of Appeals, Ninth Circuit.

July 17, 1942.

Rehearing Denied Sept. 8, 1942.

Writ of Certiorari Denied Nov. 23, 1942.

See —— U.S. ——, 63 S.Ct. 206, 87 L.Ed. ——.

For prior opinion, see 121 F.2d 218.

John T. Gose and George B. Gose, of Los Angeles, Cal., for appellant.

Clyde C. Shoemaker and William J. Currer, Jr., both of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

We have set aside our former decision and given further consideration to the facts

as stated in the report of this case in 9 Cir., 121 F.2d 218. We there held that the matured coupons attached to the policy were assigned with the policy as security for the loan to the insured. Further consideration leads us to the conclusion that the coupons were not so assigned.

After the assignment of the policy, one of the coupons was paid. This left to the insured but the first of his three options with respect to the coupons. The other two options required the surrender of *all* the coupons, both under option 2, for a fully paid-up policy after sixteen years payment of premiums, and under option 3 for the payment in cash of the face of the policy less loans after eighteen years payment of premiums. The remaining option provision is

"Option 1. The insured may use the amounts designated in the coupons hereto attached for the reduction of his premium payments from year to year.

\*      \*      \*      \*      \*

"In case the Insured shall pay all premiums in full, without coupon reduction, the unused due coupons shall be placed to the credit of the policy and shall be payable at any time, together with compound interest at the rate of three and one-half per cent per annum for each full year after due dates thereof; or, in the event of the death of the Insured said amount shall be payable to the beneficiary in addition to the face amount of the policy."

■■ When the premium became due March 20, 1934, the original insurer was bankrupt and the appellant insurer agreed to pay but half the amount due on the coupons, which the insured declined to take, as was his right. With such refusal to pay them, the insured could not be regarded as treating them as an investment at 3½ per cent. He then had but one effective use of their full value,—its application to the March 20, 1934, premium as provided in option 1. The appellant with the obligation of insurer, as well as successor to the loan, was required so to apply the coupons that the policy would survive. American Nat. Ins. Co. v. Yee Lim Shee, 9 Cir., 104 F.2d 688, 694, where we held "The general rule is that an insurer is not justified in declaring a forfeiture of an insurance policy for the nonpayment of a premium when at the time such premium accrues, the insurer is indebted to the assured, either for dividends declared or other funds which it may have

in its hands belonging to the policy holder." Cf. Great Southern Life Ins. Co. v. Jones, 8 Cir., 35 F.2d 122.

It is stipulated that the value of the coupons on March 20, 1934, was $1054. The district court in its finding XI found that there was a lien on the policy in favor of appellant as of September 1, 1933, of $117.-00. This is the difference (to the nearest dollar) between the reserve on the policy, $3,166.70, and the loan to the insured of $3050. This lien and its interest at 5 per cent on March 20, 1934, amounted to $120.-21.

■ Concerning this lien, the district court failed to take into account the provision of the reinsurance contract that "Every such lien, together with the interest thereon, *will be deducted from any payment made by the New Company pursuant to the terms of each such policy or from any settlement made thereon or from the value used to purchase or provide any paid-up or extended insurance or to exercise any option provided by said policy.*" (Emphasis supplied.) This clause requires the deduction of the lien from the coupons, whether the transaction on March 20, 1934, was (1) a "payment" of the coupons, or (2) a "settlement" in which they are a part, or (3) one involving the use of the "value" of the coupons "to exercise an option."

■ Deducting (and thereby discharging) the lien of $120.21 from $1,054, the stipulated value of the coupons, left $933.79 applicable to the premium of $936 due March 20, 1934,—that is, $2.21 less than the annual premium. However, this $933.79 was sufficient to continue the policy, since it covered three quarterly premiums under the "Automatic Extended Insurance" provision of the policy for part payment of premiums. Also under that provision such payment increased the reserve by $300, that is, three-fourths the $400 increase from the $3,050 of March 20, 1933, to $3,350 of March 20, 1934.

On March 20, 1934, this reserve of $3,350 was of sufficient value to more than cover $3,233, the loan of $3,050 and the interest, $183, prepayable for the succeeding year. There was still left a loan value in the reserve of $117, from which, under the optional policy provision (accepted by the insured) for "Premiums Advanced from Loan Values," insured's loan was automatically increased by the $2.21 to pay the balance of the premium. This increased the princi-

pal of the loan to $3,052.21. In all, with the prepaid interest, the loan amounted to $3,235.21 at the death of the insured.

The payment of the full premium created the tenth coupon of $145.80. This coupon bore interest only for "each full year." Hence on deceased's death, on October 22, 1934, less than eight months from March 20, 1934, it was payable without interest.

On the insured's death on October 22, 1934, the policy was in full force and effect with a year's premium paid. The appellant then owed $10,145.80, being the policy's principal plus $145.80, the amount of the tenth coupon, less the loan (with its interest prepaid) of $3,235.21. The balance thus due on October 22, 1934, was $6,910.59.

This amount is $117 less than $7,027.59, the amount found by the district court to be due on insured's death. The difference appears to arise from the failure of the district court to deduct from the coupon value the $117 lien on the policy on September 1, 1933, in exercising the option to use the coupons to pay the premium.

The judgment should have been for $6,-910.59, plus interest from October 22, 1934, to the judgment date, September 25, 1940, or $9,777.14,—that is, unless the appellant insurer was entitled to have added to its lien of September 1, 1933, a further sum computed on a reserve which included the coupon liability.

This claim of a larger lien is based upon an interpretation of the lien provision of appellant's contract with the Missouri Insurance Commissioner, acting as statutory trustee for the policy holders and creditors of the defunct General American Life Insurance Company.

We are of the opinion, contrary to our former view, that the trial judge properly held that appellant's agreement is an insurance agreement to be strictly construed against appellant insurer. This is apparent from the fact that the suit here is to recover $10,000 which the appellant had agreed to pay on the death of appellee's husband. As stated, it was made by the Insurance Commissioner, acting in behalf of all the persons insured by the defunct company, with the appellant insurer. In it the latter agreed to carry out the provisions of each of the insured's policies as modified by the agreement. Appellant's agreement is one for life insurance.

The pertinent portion of the lien clause is

"Section (c) Liens.—Inasmuch as the present appraised value of the assets purchased hereunder is less than the required reserves, a lien (adjusted to the nearest dollar) equal to 50% of the terminal reserve on each policy of life insurance and each annuity policy as such reserve has been established in the accounts of the old Company, computed as of September 1, 1933, to the date to which premiums on such policies have been paid, will be established and placed against such policy; provided, that in no case shall such lien exceed the amount by which said reserve shall be in excess of the indebtedness on any such policy as of September 1, 1933. * * *."

Appellant repeatedly contended below that the phrase "terminal reserve on each policy of life insurance and each annuity policy as such reserve has been established in the accounts of the Old Company," was inserted in the contract at the instance of the appellant insurer.

Applying the usual rule of construction against an insurer's own phraseology, we accept as a reasonable interpretation of the phrase "terminal reserve on each policy of *life* insurance," that it is the reserve on the "life insurance" agreement only. It is such a reserve so limited which appellant must show was "established in the accounts" of the defunct company. This is the reserve upon which the district court found the lien discussed above. The court properly excluded the proffered evidence of a larger amount based upon a claimed lien based on the amount of the coupons.

The judgment is reversed. The district court is instructed to render judgment nunc pro tunc of date September 26, 1940, for $9,777.14, the judgment to bear interest thereon at 7 percent per annum from the date of its entry.